UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **SHERRY A. COLLINS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO. H-06-0467** |
| | § | |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner, Social Security** | § | |
| **Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court in this appeal from a denial of Social Security disability benefits are Plaintiff's and Defendant's Motions for Summary Judgment. After considering the parties' filings and the applicable law, the Court finds that Plaintiff's motion, Docket No. 11, should be and hereby is **GRANTED** to the extent that the ALJ's decision is vacated. Defendant's motion, Docket No. 12, is **DENIED.**

## I.     BACKGROUND

Plaintiff Sherry Collins is a fifty-four year-old female with a long history of difficulties associated with her right knee. In 1983, Collins injured the knee during "a really bad fall at work." R. at 181. After several surgeries, Collins underwent a total replacement of her right knee in June 2000, then a revision of the knee replacement in October 2001. Problems persisted, and Collins' orthopedist (Dr. David Lionberger) performed a right knee fusion in June 2002, effectively connecting her thigh and shin bones with metal rods. Some of the rods were removed in 2004, because they had been causing Collins pain.

Plaintiff was last insured for disability benefits under Title II of the Social Security Act through December 31, 2002 (her "last-insured date"). In April 2003, Collins applied for further

benefits, asserting that she had become disabled on June 26, 2002, immediately following the knee fusion surgery.  Collins' claim was denied for failure to demonstrate that her condition was severe enough to prevent her from working.

A hearing was held on the issue of Collins' benefits claim before an administrative law judge ("ALJ") on September 14, 2004.  Collins testified at the hearing, as did Dr. George Weilepp, a medical expert ("ME"), and Wallace Stanfill, a vocational expert ("VE").[1]  During the hearing, Collins described the persistent pain in her right leg, and the severe limitations that her knee places on her.  Because of the rod that still connects her thigh and shin, Collins' leg is completely straight. She testified that she always walks with a crutch, must elevate her leg to relieve pain and tingling, and has to switch positions every fifteen minutes.  She can walk only short distances, and can stand for only five to ten minutes.  She is unable to do housework, drive, or bathe or dress herself without assistance, and her sleep is often disrupted by leg pain.  Collins also testified about pain in her left knee and in her back.

The ME's testimony, however, contradicted some of Collins' own statements, as well as the assessments provided by her treating physicians.[2]  After reviewing her medical records, the ME stated that Collins had "full capability of the knee" in October 2002 (R. 203), and that the knee was "stable" by March or July 2003.[3]  According to Dr. Weilepp, Collins was "less than

---

[1] Dr. Weilepp and Mr. Stanfill were both appointed to testify by the ALJ.  R. at 43, 45.

[2] On July 28, 2003 Dr. Lionberger completed an assessment of Collins' ability to work (R. at 121).  According to the assessment, Collins could walk for one hour, stand for one hour, and sit for three hours of an eight-hour work day. She could never climb, stoop, kneel, crouch, or crawl with her knee, and could only occasionally balance, push or pull with her feet, bend, and reach.  Dr. Lionberger stated that Collins would need a ten-minute break five or six times a day.  Collins' subsequent physician, Dr. James Fogarty, performed a similar assessment in September 2004 (R. at 171), stating that Collins could walk or stand for one hour and sit for eight hours out of an eight-hour work day.   She could never climb, balance, stoop, kneel, crouch, crawl, push or pull with her feet, or bend, and would need a thirty-minute rest four times a day.  Fogarty concurred with Collins' view that her disability began in June 2002, after the right knee fusion.

[3] In stating that Collins had full capability in her knee by October 2002, Dr. Weilepp cited to a post-fusion evaluation by Dr. Lionberger on October 3, 2002 (R. at 126).  Although the Court acknowledges its limited utility in interpreting medical evidence, the evaluation (while indicating good recovery from the fusion procedure) nowhere appears to indicate that Collins had "full capability of the knee" at that time.  Rather, the evaluation states that a

sedentary" sometime between July 2002 and July 2003, and able to perform "highly restricted light" work after that. R. at 205. The ME also questioned whether Collins' elevation of her right leg and her use of crutches were actually necessary (R. at 209, 213), and estimated that she could walk and stand for two hours (with cane as needed, but not required), and sit for six hours or more (R. at 210). The ME conceded the possibility that Collins might need frequent breaks during the day, for as long as an hour each. R. at 214.

At the hearing, the parties agreed that Collins' past relevant work consisted of: 1) laundry worker; 2) food service worker; 3) waitress; and 4) child care worker. Under questioning from the ALJ, the VE stated that none of Collins' previous jobs provided her with transferable skills. The VE opined that an individual with certain restrictions on motion (*e.g.*, no crawling, balancing, or climbing, and limited stooping or crouching) would be able to perform about forty percent of the jobs classified as "light unskilled." Assuming that the individual were sedentary, she would be able to perform the full range of "sedentary unskilled" jobs. When asked by Collins' attorney to add the limitation of frequent rests during the day, however, the VE stated that she would be ineligible for "competitive employment in any level of exertion," even the sedentary level. R. at 222.

In a decision issued on July 29, 2005 (R. at 13), the ALJ denied Collins' claim for disability benefits. He found that Collins did suffer from two severe impairments (osteoarthrosis and status post right knee fusion), but determined that these impairments did not meet or medically equal any of the listed impairments specified in the Social Security regulations. Proceeding to the analysis of Collins' residual functional capacity ("RFC"), the ALJ agreed that

---

future "orthotic application" procedure would be needed, and that Collins would *begin* a "progressive weightbearing as tolerated program." Similarly, the ME referred to two pages from Collins' medical records to support his opinion that her knee was "stable" in March or July 2003 (R. at 151, 161). Again, the Court cannot find, to the best of its ability, any reference to a "stable" knee in the cited pages.

3

she could not perform any of her past relevant work, but stated that she retained the capacity to "perform a significant range of light work." R. at 19. The ALJ opined that Collins' alleged symptoms "are not fully credible" (R. at 15), and that "[w]hile no doubt the claimant has some pain and discomfort associated with impairments, such symptoms are found to be mild to moderate at most." R. at 16. The administrative opinion relies heavily on the testimony of the ME, essentially repeating Dr. Weilepp's statements that Collins had full capability of the knee by October 2002, and that the knee was stable by May 2004 (R. at 16).

The Social Security Appeals Council denied review of the ALJ's decision in December 2005. Plaintiff filed the instant case in February 2006, maintaining that the ALJ erred in denying her claim for benefits.

## II.   ANALYSIS

### A.   Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.*

**B.      Standard of Review**

Judicial review of an ALJ's denial of disability benefits is limited to determining "whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence."  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).  "It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* (internal quotation marks omitted) (citing *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973); *Payne v. Weinberger*, 480 F.2d 1006 (5th Cir. 1973)).

**C.      Legal Standard**

A disability claimant bears the initial burden of proving that she is disabled.  *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").  A person claiming a disability must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). Furthermore, "[a] claimant is eligible for benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured." *Ivy v. Sullivan*, 898 F.2d

5

1045, 1048 (5th Cir. 1990).   In the instant case, Plaintiff bears the burden of demonstrating that a qualifying medical impairment began on or before December 31, 2002.

The Court evaluates a disability claim via a five-step process, as follows:

(1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Villa*, 895 F.2d at 1022).  "A finding that a claimant is not disabled at any point in the five-step process is conclusive and terminates the . . . analysis."  *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

**D.    Collins' Claim**

With respect to Collins' claim for benefits, the Court finds that the ALJ failed to apply proper legal standards at step five of the disability analysis.[4]  First, the ALJ did not appropriately consider the opinions and assessments provided by Collins' treating physicians as to her residual functional capacity.   Second, the ALJ did not properly consider all of the available evidence, including the bulk of the medical evidence in the record documenting Plaintiff's condition.

---

[4] The Court has only considered evidence and arguments pertaining to Plaintiff's right knee.  As discussed in more detail later, the record contains ample evidence of difficulties associated with the right knee preceding Plaintiff's last-insured date of December 31, 2002.  Plaintiff has not introduced evidence, however, that her left knee and back problems started before her last-insured date.  For example, Dr. Eugene Heiman noted that Collins' back problems started around mid-January 2003.  R. at 105.  Similarly, in January 2003, Dr. Heiman wrote that "[t]he patient comes in today now with a left knee problem, which she has never had before."  R. at 116.  "A claimant is eligible for benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured."  *Ivy*, 898 F.2d at 1048.

### 1.  Collins' treating physicians

The ALJ erred in failing properly to consider the opinions and assessments offered by Plaintiff's treating physicians.  There is no mention of the treating physicians in the administrative opinion, nor any reference to their examination notes or the assessments they provided with regard to Collins' functional capacity.  *See supra* note 2.  The ALJ neither gave the treating physicians' views controlling weight, nor performed the required six-step analysis to determine what weight to give them.

The first step in evaluating a treating physician's medical opinion is to determine whether, based on the record, it should receive *controlling* weight.  *See* 20 C.F.R. § 404.1527(d)(2) ("Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.").  Even if a treating physician's opinion is not given controlling weight, it should receive due weight, and often even "the greatest weight."  *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000) (quoting Social Security Ruling 96-2p, 61 Fed. Reg. 34,490, 34,491 (July 2, 1996)); *see also Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980) (a physician's view is evidence "entitled to great weight.").  In failing even to mention the opinions of Drs. Fogarty and Lionberger, the ALJ essentially gave their views no weight at all.  *See Newton*, 209 F.3d at 455 (finding error when "[i]n actuality, the ALJ gave [the treating physician's] opinions *no* weight.").  The Fifth Circuit has held that an ALJ may decrease the weight afforded to the opinions of treating physicians only if there is good cause to do so. *Leggett v. Chater*, 67 F.3d 558, 565-66 (5th Cir. 1995).  As discussed in more detail below,

however, the record contains ample evidence supporting the physicians' assessments that Collins suffered from persistent pain and significant restrictions on her movement.  *See infra* Part II.D.2.

If the ALJ finds that the treating physician's opinion should not receive controlling weight, he or she must apply six factors articulated in the regulations:  1) length of the treatment relationship and the frequency of the examination; 2) nature and extent of the treatment relationship; 3) supportability; 4) consistency; 5) specialization; and 6) other factors.  *Id.*; *see also Newton*, 209 F.3d at 456 ("an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).") (emphasis in the original).  This six-step analysis is entirely absent from the ALJ's opinion.

Defendant argues that *Newton* does not apply in the instant case, because "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another."  Def.'s Mot. Summ. J. 5.  According to Defendant, the observations offered by Drs. Fogarty and Lionberger in their treatment notes conflict with their assessments of Collins' functional capacity.  The Court is not persuaded, however, that *Newton* is inapposite.  Defendant's interpretation of the medical evidence is not particularly convincing; for example, Defendant is at times content simply to echo the ALJ's questionable medical analysis, including the reference to Collins' supposed "full capability of the knee."  *Id.* at 6; *see supra* note 3.  Further, the administrative opinion nowhere features a comparison of medical opinions, accompanied by a factual finding that one opinion is more well-founded than another.  Therefore, *Newton* properly applies.  Even if the doctors had offered inconsistent statements, or their opinions were unsupported by the record,  the ALJ would not be relieved of

the responsibility to proceed through the six-step analysis and to demonstrate good cause for discounting the physicians' opinions.

The Court simply cannot agree with Defendant's argument that "although the ALJ did not specifically discuss Dr. Fogarty's and Dr. Lionberger's functional capacity assessments in his decision, he clearly considered evidence that conflicted with their opinions, including their own treatment notes."  Def.'s Mot. Summ. J. 7.  In the Court's view, the ALJ has not justified his complete disregard of opinions and assessments offered by Plaintiff's treating physicians.[5]

## 2.  Failure to weigh all available evidence

The ALJ also committed error in failing to weigh all available evidence, in particular the considerable record evidence documenting Plaintiff's long history of pain and restricted activity associated with her right knee.  The regulations require the ALJ to "consider all evidence in your case record when we make a determination or decision whether you are disabled."   20 C.F.R. § 404.1520(a)(3).  In evaluating a claimant's symptoms, an ALJ must similarly "consider all of the available evidence, including your history, the signs and laboratory findings, and statements from you, your treating or nontreating source, or other persons about how your symptoms affect you."  20 C.F.R. § 404.1529(c)(1).  As discussed above, the opinion omits any reference to statements made by Collins' treating sources.  Further, the opinion expends only a paragraph— gleaned entirely from Collins' hearing testimony—on Plaintiff's symptoms, including pain and

---

[5] Although not as egregious, the Court agrees with Plaintiff that the ALJ also failed to justify the rather considerable weight he gave to the opinions of the ME, who never examined or treated Collins.  When the treating source's opinion is not given controlling weight, Social Security regulations require the ALJ to "explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us."  20 C.F.R. § 404.1527(f)(ii).  The administrative opinion wholly fails to explain its reliance on Dr. Weilepp's statements, at least some of which seem to be unsupported by the medical record.  *See supra* note 3.  In fact, the opinion exhibits a clear preference for quoting Dr. Weilepp, rather than citing to the record, in assessing Collins' functional capacity.  R. at 15-16.

restricted movement, before determining that "[t]he claimant's allegations of a total disability are not fully credible." R. at 15.

In fact, there is ample evidence in the record supporting Plaintiff's claim of persistent right knee pain. In July 2001, Dr. Carl Cannon noted Collins' "progressive right knee pain," noting that "[s]he has a long-standing history of right knee problems beginning in approximately 1980." R. at 100-01. In August 2001, Collins had a consultation with Dr. Lionberger, who wrote that she had suffered from "[s]ymptomatic pain since total knee replacement roughly a year ago with increasing amounts of sensitivity." R. at 135. After Collins' knee revision, Dr. Cannon noted in April 2002 that "[u]nfortunately, she is still in significant pain. . . . Currently, her range of motion is only 14-54 degrees. It is quite painful." R. at 99. In July of 2003, well after her right knee fusion, Dr. Lionberger observed that Collins was "[s]till having about the same complaints of pain . . . obviously not the pain relief that we expected when we entered into this fusion scenario. . . . we may be as good as we can expect in terms of her overall recovery." R. at 123. In March 2004, Dr. Fogarty noted that Collins was "[s]till having pain in the knee and also now has pain down the leg and into the ankle. . . . She said the leg is weak and it is hard to move around." The discomfort was sufficiently serious for Dr. Fogarty to advise Collins that "she might be better off with an amputation because of the problems she is having with her knee." R. at 155. In August 2004, Collins was still suffering pain in her leg down to the ankle and finding it difficult to move the leg around. R. at 167.

Of course, it is not the province of the Court to make independent medical evaluations or to re-do the analyses of administrative law judges, who are much closer to the facts and usually more expert in the field. In this case, however, there is no analysis or even summary of the record evidence in the administrative opinion. It is simply impossible to determine which pieces

of medical evidence the ALJ may have considered or weighed in arriving at his decision to deny Collins' claim for benefits.  The ALJ's failure to address the bulk of the record evidence in his opinion constituted error.

### 3. Fees and remand procedure

In her motion, Plaintiff requests that attorney's fees be awarded pursuant to the Equal Access to Justice Act.  Pl.'s Mot. Summ. J. 18.  The Court defers ruling on the request for fees until appropriate supporting documentation has been submitted and the parties have conferred on the fees motion.

Finally, the Court is compelled to express its concern about the procedural history of this case.  The record reflects that Plaintiff requested an administrative hearing on September 17, 2003; the hearing was held almost a year later, on September 14, 2004; and the ALJ's opinion issued over ten months later, on July 29, 2005.  A review of the opinion strongly suggests that in drafting it, the author relied almost entirely on the hearing transcript, rather than on a thorough revisiting of the record.  Plaintiff has waited almost four years for a determination of her eligibility for disability benefits, and the Court is unable to express confidence that upon remand, Plaintiff's case will receive timely review.  Therefore, Administrative Law Judge Richard Abrams is hereby **ORDERED TO SHOW CAUSE** within thirty days of entry of this Memorandum and Order why this case should not be remanded to a different ALJ.  After the thirty days have expired, the Court will issue a supplemental order determining whether the case will be remanded to ALJ Abrams.

## III.   CONCLUSION

Because the ALJ erred in wholly discounting the opinions and assessments offered by Collins' treating physicians and in failing to consider all available evidence, Plaintiff's motion

11

for summary judgment is **GRANTED** to the extent that the ALJ's decision is **VACATED**. Defendant's motion for summary judgment is **DENIED.**   This case will be remanded by supplemental order for further proceedings not inconsistent with this Memorandum and Order.

       **IT IS SO ORDERED**.

       **SIGNED** this 28th day of March, 2007.

                                       KEITH P. ELLISON
                                        UNITED STATES DISTRICT JUDGE

                **TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL**
              **FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY**
                  **EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT**